# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5193 | **DATE** | 1/9/2003 |
| **CASE TITLE** | AMICA MUTUAL INSURANCE COMPANY vs. PATRICIA HENDERSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. JC's motion to dismiss is denied. Response to motion to dismiss to be filed by January 30, 2003. Third-party defendant Environmental Diagnostic Inc.'s motion to strike discovery is denied. Status hearing held and continued to 2/25/03 at 9:00 a.m.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 10 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| LG | courtroom deputy's initials | 03 JAN -9 PM 6:06 Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

Minute Order Form (06/97)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | ) | **DOCKETED** |
| | ) | |
| Plaintiff, | ) | **JAN 1 0 2003** |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA HENDERSON, | ) | |
| | ) | No. 02 C 5193 |
| Defendant. | ) | |
| ---------------------------------------- | ) | Judge John W. Darrah |
| | ) | |
| PATRICIA HENDERSON, individually and as | ) | |
| Guardian of IAN HENDERSON and ALEX | ) | |
| HENDERSON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMICA MUTUAL INSURANCE COMPANY; | ) | |
| SERVICEMASTER COMPANY; O'BRIEN | ) | |
| PLUMBING & SEWER; JC RESTORATION, INC.; | ) | |
| and ENVIRONMENTAL DIAGNOSTICS, INC.; | ) | |
| | ) | |
| Counterclaim-Defendants and | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Amica Mutual Insurance Company "(Amica"), filed a Complaint for Declaratory Judgment against Defendant, Patricia Henderson ("Henderson"). Subsequently, Henderson filed a Counterclaim against Amica and a Third-Party Complaint against Servicemaster Company ("Servicemaster"); O'Brien Plumbing & Sewer ("O'Brien"); JC Restoration, Inc. ("JC"); and Environmental Diagnostics, Inc. ("Environmental"). Presently pending before the Court is JC's Motion to Dismiss to which Servicemaster and Environmental



have joined.

A reading of Amica's Complaint for Declaratory Judgment supports the following summary of the alleged conduct of the parties as to its claims.

Amica issued homeowners insurance to Henderson for her residence in Chicago, Illinois. The Amica/Henderson policies provide coverage for dwelling, other structures, personal property, loss of use, and personal liability. The policies do not provide coverage for the insured's personal injury, pain and suffering, medical care, lost income, or increased cost of succeeding insurance.

On September 9, 1998, Henderson sustained loss to her residence resulting from a fire which occurred at an adjacent residence. Henderson reported the occurrence to Amica, and Amica began adjustment of the losses.

On July 22, 2001, Henderson sustained losses to her residence resulting from a windstorm that damaged the siding to her home. Henderson reported the occurrence to Amica, and Amica began adjustment of the losses under this claim. In the course of the investigation of the second claim, water and mold damage to Henderson's property was discovered, some of which allegedly resulted from the fire loss of September 9, 1998. After notification of the alleged mold damage, Amica retained specialized service companies to perform investigations and microbial toxin testing at the Henderson property. Amica also retained service companies to repair and remediate the damage to the Henderson property. Amica has issued payment to Henderson and on Henderson's behalf, under both claims.

On April 26, 20002, Amica received correspondence from Henderson's legal counsel requesting that Amica pay for her residence to be razed and rebuilt. On July 9, 2002, Amica received another correspondence from Henderson's legal counsel requesting settlement in the amount of $2,375,000 for specified claims set forth in the correspondence.

Amica seeks a declaration that the insurance policies do not provide coverage for certain claims by Henderson and a determination by this Court of which damages claimed by Henderson are covered under the insurance policies and the amount of loss recoverable by Henderson under the policies.

Subsequently, Henderson filed a counterclaim/third-party complaint. A reading of Henderson's Amended Counterclaim/Third-Party Complaint supports the following summary of the alleged conduct of the parties as to her and her sons' claims.

On three occasions - September 1998, June 1999, and August 2001 - Amica assumed responsibility for repairing damage to Henderson's home. On each occasion, the contractors hired by Amica - Servicemaster, O'Brien, JC, and Environmental - performed the repair work negligently. As a result, water was able to seep into Henderson's home, causing toxic mold to grow and spread throughout the home.

The toxic mold contamination caused Henderson and her two sons to develop respiratory problems, asthma, allergies, and compromised their immune systems. Their home is still infested with mold and must be razed and rebuilt.

Henderson's claims against Amica include negligence in connection with the September 1998 fire, a June 1999 water leak, and the July 2001 water leak and mold contamination; intentional infliction of emotional distress ("IIED") by allowing Henderson and her family to reside in the home knowing the toxicity of the mold in the home; negligent infliction of emotional distress ("NIED") for not warning Henderson of the dangers of mold contamination and remediation; violation of the Illinois Consumer Fraud Act; and declaratory judgment. Henderson's claims against Servicemaster and O'Brien include negligence by failing to complete

3

the repair and restoration work properly. Henderson's claims against JC include negligent restoration, breach of contract, IIED, and NIED. Henderson's claims against Environmental include negligent inspecting and testing of her home, IIED, and NIED.

JC argues that this Court lacks supplemental jurisdiction over the third-party claims.

Section 1367 provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a). This section allows district courts to maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims "are so related to" the original claims that they form the same case or controversy. *Channell v. Citicorp Nat'l Serv., Inc.*, 89 F.3d 379, 385-87 (7th Cir. 1996) (*Channell*). A "loose factual connection between the claims" is sufficient to allow supplemental jurisdiction. *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

In the original action, Amica seeks a declaration concerning insurance coverage stemming from a nearby fire and storm damage to Henderson's home. As part of the original action, Amica includes the denial of benefits for personal injury, pain and suffering, medical care, lost income, and increased succeeding insurance coverage. Henderson seeks compensation for these matters based on her belief that Amica and/or its contractors are the cause of the damages.

In Henderson's counterclaim and third-party action, Henderson alleges that Amica and its contractors caused damages to her and her children after their negligent repair of her home following the same nearby fire and storm.

The above facts demonstrate that the series of events from the September 1998 fire to the

4

mold contamination will be issues in the declaratory judgment and Henderson's counterclaims and third-party claims. Furthermore, Amica's relationship with the contractors will also be at issue in both Amica's and Henderson's claims. At the minimum, Henderson's allegations establishes that there is a "loose factual connection" between the claims sufficient to allow supplemental jurisdiction.

JC also argues that even if supplemental jurisdiction exists, the Court should decline to hear the third-party claims because such claims would predominate over Amica's declaratory action.

A district court may decline to exercise supplemental jurisdiction if the claims, including counterclaims, would substantially predominate over the claims over which the court has original jurisdiction. 42 U.S.C. § 1367(c)(2); *Channell*, 89 F.3d at 387.

As found above, the allegations in Amica's claims and Henderson's counterclaims against Amica involve factual disputes arising after the September 1998 nearby fire. The factual issues raised in these claims are also part of the claims against the other Defendants now seeking dismissal. Henderson's claims are clearly subsumed within the issues raised by the declaratory action and counterclaims against Amica. Accordingly, the third-party claims will not substantially predominate over the original action to mandate the denial of supplemental jurisdiction.

For the reasons stated above, JC's Motion to Dismiss is denied.

Dated: January 9, 2003

JOHN W. DARRAH
United States District Judge

5