Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5193 | **DATE** | 5/14/2003 |
| **CASE TITLE** | AMICA MUTUAL INSURANCE CO. vs. PATRICIA HENDERSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 8/6/03 at 9:00 a.m. Third party defendant Environmental Diagnostics, Inc.'s motion to reconsider is denied. Enter Memorandum Opinion And Order. Environmental's motion to dismiss is denied. Defendants answer to be filed by 6/11/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 15 2003 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 03 MAY 14 PM 4:28 | date mailed notice | |
| LG | courtroom deputy's initials | CLERK U.S. DISTRICT COURT Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMICA MUTUAL INSURANCE COMPANY, )
)
Plaintiff, )
)
v. )
)
PATRICIA HENDERSON, )
) No. 02 C 5193
Defendant. )
———————————————————————) Judge John W. Darrah
)
PATRICIA HENDERSON, individually and as )
Guardian of IAN HENDERSON and ALEX )
HENDERSON, )
)
Defendant/Counterclaim-Plaintiff, )
Third-Party Plaintiff, )
)
v. )
)
AMICA MUTUAL INSURANCE COMPANY; )
SERVICEMASTER COMPANY; O'BRIEN )
PLUMBING & SEWER; JC RESTORATION, INC.; )
and ENVIRONMENTAL DIAGNOSTICS, INC.; )
)
Counterclaim-Defendants and )
Third-Party Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Amica Mutual Insurance Company "(Amica"), filed a Complaint for Declaratory Judgment against Defendant, Patricia Henderson ("Henderson"). Subsequently, Henderson filed a Counterclaim against Amica and a Third-Party Complaint against Servicemaster Company ("Servicemaster"); O'Brien Plumbing & Sewer ("O'Brien"); JC Restoration, Inc. ("JC Restoration"); and Environmental Diagnostics, Inc. ("Environmental"). Presently pending before the Court is Environmental's Motion to Dismiss Certain Counts of the

Third-Party Complaint.

A reading of Amica's Complaint for Declaratory Judgment supports the following summary of the alleged conduct of the parties as to its claims.

Amica issued homeowners insurance to Henderson for her residence in Chicago, Illinois. The Amica/Henderson policies provide coverage for dwelling, other structures, personal property, loss of use, and personal liability. The policies do not provide coverage for the insured's personal injury, pain and suffering, medical care, lost income, or increased cost of succeeding insurance.

On September 9, 1998, Henderson sustained loss to her residence resulting from a fire which occurred at an adjacent residence. Henderson reported the occurrence to Amica, and Amica began adjustment of the losses.

On July 22, 2001, Henderson sustained losses to her residence resulting from a windstorm that damaged the siding to her home. Henderson reported the occurrence to Amica, and Amica began adjustment of the losses under this claim. In the course of the investigation of the second claim, water and mold damage to Henderson's property was discovered, some of which allegedly resulted from the fire loss of September 9, 1998. After notification of the alleged mold damage, Amica retained specialized service companies to perform investigations and microbial toxin testing at the Henderson property. Amica also retained service companies to repair and remediate the damage to the Henderson property. Amica has issued payment to Henderson and on Henderson's behalf under both claims.

On April 26, 2002, Amica received correspondence from Henderson's legal counsel, requesting that Amica pay for her residence to be razed and rebuilt. On July 9, 2002, Amica received another correspondence from Henderson's legal counsel, requesting settlement specified claims set forth in the correspondence.

Amica seeks a declaration that the insurance policies do not provide coverage for certain claims by Henderson and a determination by this Court of which damages claimed by Henderson are covered under the insurance policies and the amount of loss recoverable by Henderson under the policies.

Subsequently, Henderson filed a counterclaim/third-party complaint. A reading of Henderson's Amended Counterclaim/Third-Party Complaint supports the following summary of the alleged conduct of the parties as to her and her sons' claims.

On three occasions - September 1998, June 1999, and August 2001 - Amica assumed responsibility for repairing damage to Henderson's home. Amica selected and hired JC Restoration and Environmental to inspect, repair, and remediate the damage and contamination. On each occasion, the contractors hired by Amica performed the repair work negligently. As a result, water was able to seep into Henderson's home, causing toxic mold to grow and spread throughout the home.

Specifically as to Environmental, Henderson alleges that Steven Parkhurst ("Parkhurst") of Environmental inspected her home in August 2001. At that time, he found mold and water intrusion in several areas of the home. Parkhurst returned in September 2001 to collect air and surface samples for a microbial study. Although Parkhurst knew, or should have known, that the mold in the home was toxic, Parkhurst failed to warn Henderson of the potential dangers of the mold contamination.

In October 2001, JC Restoration began the remediation and repair. Prior to this time, Environmental took no steps to isolate or contain the mold. As a result, the mold spread throughout the home. Environmental visited the Henderson home on several occasions while the

3

remediation work was taking place. Environmental knew or should have known that JC Restoration was not following proper procedures to remove and remediate the toxic mold, and Environmental did not tell JC Restoration to change their negligent procedures.

Henderson's claims against Environmental include: negligence (Count V) in connection with Environmental's failure to tell Henderson that the mold in the home could be toxic, failing to tell Henderson that contact with the mold could be hazardous, and failing to tell Henderson that JC Restoration's work did not isolate and contain the mold contamination; intentional infliction of emotional distress (Count VIII) by allowing Henderson and her family to reside in the home knowing the toxicity of the mold in the home; and negligent infliction of emotional distress (Count IX) for not warning Henderson of the dangers of mold contamination and remediation.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) (*Marshall-Mosby*). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). A filing under Federal Rule of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain", and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary judgment motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

As to Henderson's negligence claim, Environmental contends that Henderson failed to adequately plead that Environmental owed a duty to the Hendersons.

A negligence claim includes a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *See Ward v. K mart Corp*, 136 Ill. 2d 132, 140 (1990). The existence of duty has been defined as "whether defendant and plaintiffs stood in such a relationship to each other that the law imposed upon defendant an obligation of reasonable conduct for the benefit of the plaintiffs." *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002) (*Happel*). Every person owes all others a duty to exercise ordinary care and to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of that person's action. This duty does not depend upon contract, privity of interest or the proximity of relationship. *See Cozza v. Culinary Foods, Inc.*, 311 Ill. App. 3d 615, 622 (2000). Factors to be considered in determining whether a duty exists include: (1) the reasonable foreseeability that the defendant's conduct might injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden guarding against such injury, and (4) the consequences of placing that burden on the defendant. *See Happel*, 199 Ill. 2d at 187.

In the instant case, Henderson alleges that Environmental owed a duty to her and her children based upon Environmental's relationship with her and the children. Environmental was

5

hired by Amica to inspect, repair, and remediate the damage and mold contamination. In light of Environmental's expertise in the field, Environmental knew of the health hazards associated with the mold contamination and failed to inform the Hendersons of this information and failed to adequately insure that the mold contamination did not spread. At this stage of the litigation, Henderson has sufficiently pled a duty. Furthermore, Henderson has sufficiently pled that Environmental breached the alleged duty and that such breach proximately caused her injuries. Accordingly, Count V is not dismissed.

Environmental contends that Henderson failed to state a claim for intentional infliction of emotional distress.

Under Illinois law, the elements of this claim are: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did in fact cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2df 697, 702 (7th Cir. 1993), quoting *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1998).

Henderson alleges that Environmental's conduct was extreme and outrageous in that Environmental knew of the toxicity or, at the least, the potential toxicity of the mold yet it allowed Henderson and her children to stay in the home; and Environmental failed to isolate and contain the mold contamination. As a result of Environmental's intentional conduct, Henderson and her children experienced severe emotional distress.

Under the 12(b)(6) standard discussed above, dismissal of the complaint for failure to state a claim is proper only if the plaintiff can prove no set of facts in support of the claim that

would entitle her to relief. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Henderson's allegations, if proven, could support an intentional infliction of emotional distress claim. Accordingly, at this stage of the litigation, Count VIII cannot be dismissed.

Lastly, Environmental contends that Henderson failed to state a cause of action for negligent infliction of emotional distress.

To state a claim based on this cause of action, a plaintiff must allege that the infliction of emotional distress arose out of the negligent conduct of a defendant. *See Brackett v. Galesburg Clinic Ass'n*, 292 Ill. App. 3d 867, 872 (1997).

As discussed above, at this stage of the litigation, Henderson has sufficiently pled negligent conduct on the part of Environmental. Henderson also alleges that this negligent conduct caused her and her children emotional distress. Accordingly, Henderson has sufficiently pled a negligent infliction of emotional distress cause of action.

For the reasons stated above, Environmental's Motion to Dismiss is denied.

Dated: May 14, 2003

JOHN W. DARRAH
United States District Judge